UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEBORAH A. ZUREK

                        Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　6:15-CV-0453
　　　　　　　　　　　　　　　　　　　　　　　　(GTS)
CAROLYN W. COLVIN
Acting Commissioner of Social Security,

                        Defendant.
_____

APPEARANCES:　　　　　　　　　　　　　　OF COUNSEL:

OLINSKY LAW GROUP　　　　　　　　　　　HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.　　　　　　　TOMASINA DIGRIGOLI, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Deborah A. Zurek ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 16.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

I.   RELEVANT BACKGROUND

   A.   Factual Background

Plaintiff was born on May 16, 1979. Plaintiff completed the tenth grade, obtained a general equivalency diploma (GED), and has past work as a customer service sales clerk. Generally, Plaintiff's alleged disability consists of multiple herniated, slipped, and bulging discs in her back; right wrist problems; numbness in her feet; and limited feeling in her legs.

   B.   Procedural History

On June 16, 2012, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning April 9, 2011. Plaintiff's application was initially denied on September 25, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On September 12, 2013, Plaintiff appeared in a video hearing before the ALJ, Angela Miranda. (T. 35-76.) On November 27, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 31.) On February 23, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

   C.   The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 24-31.) First, the ALJ found that Plaintiff met the insured status requirements through June 20, 2015, and has not engaged in substantial gainful activity since April 9, 2011, the alleged onset date. (T. 24.) Second, the ALJ found that Plaintiff's lumbar spine dysfunction, multiple level degenerative disc disease, and residual effect of L5-S1 microdiscectomy times two are severe impairments, but that Plaintiff's right wrist dysfunction, depression, and substance use disorder are not severe impairments. (T. 24-25.) Third, the ALJ

found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 25.) The ALJ considered Listing 1.04. (*Id.*) Fourth, the ALJ found that Plaintiff

> has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b)[1] with the postural limitations described below. More specifically, the claimant has the capacity to occasionally lift and carry 20 pounds. The claimant has the unlimited capacity to push and pull up to the weight capacity for lifting and carrying. The claimant has the capacity to stand and walk 6-8 hours in an 8-hour workday. The claimant requires the ability to change position while at work but this can be met at normal breaks and meal periods. Considering the claimant's subjective complaints of back pain and lack of mobility, the claimant has the capacity to occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps. Despite the claimant's complaints of falling, there is no evidence the claimant has any limitations in the ability to balance. The claimant has no limitations in manipulative abilities. Despite the claimant's complaints of pain, mentally the claimant has the capacity to understand, remember and carry out multiple-step tasks, consistent with the demands of a normal workday. The claimant has the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place.

(T. 25-26.) Fifth, and finally, the ALJ found that Plaintiff could perform her past relevant work as a customer service sales clerk. (T. 30.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes five arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ failed to consider Dr. Soults' treatment notes from April 2013, May 2013, and July 2013 that documented Plaintiff's worsening condition in formulating the RFC and evaluating Plaintiff's credibility. (Dkt. No. 12, at 14-15 [Pl.'s Mem. of Law].) Second, Plaintiff argues that her spinal impairments should be found to meet Listing 1.04A. (*Id.* at 15-

---

[1] Light work requires the abilities to sit for six hours, stand or walk for six hours, lift up to 20 pounds at a time, and frequently lift or carry up to ten pounds during an eight-hour workday. 20 C.F.R. §§ 404.1567(b), 416.927(b); SSR 83-10, 1983 WL 31251 (1983).

20.) Third, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. (*Id.* at 20-22.) Within this argument, Plaintiff argues that the ALJ failed to develop the record. (*Id.*) Fourth, Plaintiff argues that the ALJ's credibility analysis is not supported by substantial evidence. (*Id.* at 22-24.) Fifth, and finally, Plaintiff argues that the ALJ's determination that Plaintiff could perform her past relevant work as a customer service sales clerk is not supported by substantial evidence. (*Id.* at 24-25.)

Defendant makes five arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly evaluated the evidence of record. (Dkt. No. 16, at 6 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly found that Plaintiff's back impairments did not meet or equal Listing 1.04. (*Id.* at 7-8.) Third, Defendant argues that the ALJ's RFC finding was supported by substantial evidence. (*Id.* at 8-12.) Fourth, Defendant argues that the ALJ's credibility finding was supported by substantial evidence. (*Id.* at 12-14.) Fifth, and finally, Defendant argues that the ALJ properly found that Plaintiff could perform her past relevant work as a customer service sales clerk. (*Id.* at 14-16.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A. Whether the ALJ's Determination That Plaintiff's Back Impairments Did Not Meet or Equal Listing 1.04 Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 7-8 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

6

A plaintiff will be found disabled if the individual has an impairment, or combination of impairments, that meets or equals one of the Listings and meets the duration requirement. 20 C.F.R. §§ 404.1520(d), 416.920(d). The burden is on the plaintiff to present medical findings that his or her impairment meets or equals a Listing. *Davis v. Astrue,* 09-CV-0186, 2010 WL 2545961, at *3 (N.D.N.Y. June 3, 2010). A plaintiff must show that his or her impairment meets or equals *all* of the specified medical criteria of a Listing. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (superceded by statute on other grounds). If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Sullivan,* 493 U.S. at 530.

Listing 1.04A, disorders of the spine, requires compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and positive straight-leg raising test results (sitting and supine) if there is involvement of the lower back. 20 C.F.R. Part 404, Subpart P, App. 1.

Listing 1.04C, disorders of the spine, requires compromise of a nerve root or the spinal cord with lumbar spinal stenosis resulting in pseudoclaudication established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively. *Id.* Inability to ambulate effectively means an extreme limitation of the ability to walk (*i.e.*, an impairment that interferes very seriously with an individual's ability to independently initiate, sustain, or complete activities). *Id.* Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities. *Id.*

Here, the ALJ found that Plaintiff's back impairment did not meet Listing 1.04A, citing medical evidence documenting Plaintiff's inconsistent straight leg raise test results and generally consistent full muscle strength, the latter indicating that Plaintiff's impairment does not satisfy the motor loss requirement to meet the Listing.  (T. 25.)  The ALJ noted that, on September 17, 2012, consultative examiner Pamela Tabb, M.D., observed that Plaintiff's straight leg raise tests were negative bilaterally.  (T. 25, 28, 297.)  Dr. Tabb observed that Plaintiff had full strength and equal reflexes in the upper and lower extremities, Plaintiff used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty.  (T. 296-97.)  The ALJ noted that, while treating neurosurgeon Clifford Soults, M.D., observed that Plaintiff had positive nerve root tension signs, sensory deficit, a positive straight leg raise sign, and reduced reflexes in various treatment records from November 2010 to March 2013, Dr. Soults consistently observed that Plaintiff's strength remained full during the same time period.  (T. 25, 27-28.)

Turning to Listing 1.04C, the ALJ noted that the medical record does not establish that Plaintiff was unable to ambulate effectively.  (T. 25.)  For example, the ALJ noted that Dr. Tabb observed that Plaintiff walked with an antalgic gait, but her gait improved as she left the examination room.  (*Id.*)  Moreover, as noted above, Dr. Tabb observed that Plaintiff used no assistive devices to walk.  (T. 296.)  Finally, the ALJ noted that Dr. Soults observed that Plaintiff walked with a stable gait.

Accordingly, the ALJ's determination that Plaintiff did not meet Listing 1.04 was supported by substantial evidence and remand is not required on this basis.

### B. Whether the ALJ's RFC Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12, at 20-22 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources, such as physicians' assistants, to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

9

Here, the record contains opinions of Plaintiff's physical limitations from the following two acceptable medical sources: (1) treating neurosurgeon Clifford Soults, M.D., and (2) consultative examiner Pamela Tabb, M.D.

### i. Treating Neurosurgeon Dr. Soults

On December 8, 2010, and March 11, 2013, Plaintiff underwent microdiscectomy surgeries performed by Dr. Soults. (T. 27-28, 263, 335.) On December 8, 2010, the date of Plaintiff's first microdiscectomy surgery, Dr. Soults' Physician Assistant Timothy Mercer, R.P.A., advised that Plaintiff should not engage in strenuous activities, and should not lift more than ten pounds, bend, push, pull, twist, carry, bathe, or swim. (T. 29, 269.) The ALJ afforded limited weight to these limitations, reasoning that the limitations predated Plaintiff's alleged disability onset date and were intended as temporary post-surgical instructions rather than a long-term assessment of Plaintiff's capacity. (*Id.*)

On August 17, 2011, Dr. Soults opined that Plaintiff should be taken out of work unless she improves. (T. 28.) The ALJ afforded limited weight to this opinion, reasoning that it was rendered while Plaintiff was pregnant and was intended to be a temporary restriction pending further evaluation, did not provide a long-term function by function capacity assessment, and predated Plaintiff's second surgery that reportedly led to some improvement in her condition. (*Id.*)

On January 26, 2012, Dr. Soults opined that Plaintiff could return to "secretarial work" but he was not sure that she could tolerate her previous work as a certified nurse's assistant. (T. 28.) The ALJ afforded limited weight to this opinion, reasoning that it was vague, did not provide a function by function review of Plaintiff's capacity, and predated her second surgery that led to some improvement. (T. 28-29.) Moreover, the ALJ noted ambiguity and gaps in the

opinion, stating that Dr. Soults may have had sedentary work in mind when referencing secretarial work, and may have had medium work in mind when referencing Plaintiff's past work as a nurse's assistant, however the opinion did not appear to address light work between those exertional levels. (T. 29.)

On March 11, 2013, Plaintiff underwent her second microdiscectomy surgery performed by Dr. Soults. (T. 335.) On the same date, Dr. Soults opined that Plaintiff could lift no more than ten pounds, could not perform prolonged sitting or walking, could perform only limited extension and flexion of her lower spine, and could not drive. (T. 29.) The ALJ afforded limited weight to this opinion, reasoning that the restrictions appear to have been post-surgical recovery measures rather than long-term limitations. (*Id.*)

On March 25, 2013, Dr. Soults advised that Plaintiff should not lift her small child. (*Id.*) The ALJ afforded limited weight to this statement, reasoning that it was unclear how much weight the limitation included, and it did not appear to be a work-related limitation because it referenced a specific activity that Plaintiff performed at home. (*Id.*)

####        ii.        Consultative Examiner Dr. Tabb

On September 17, 2012, Dr. Tabb opined that Plaintiff had "mild" restrictions in lifting, carrying, bending, pushing, and pulling. (T. 29, 298.) Dr. Tabb diagnosed Plaintiff with back pain (status post back surgery) and right carpal tunnel syndrome (status post surgical repair). (T. 297.)

Upon examination, Dr. Tabb observed that Plaintiff walked with an antalgic gait, but her gait improved as she left the examination room. (T. 28.) Dr. Tabb observed that Plaintiff's stance was normal, her squat was reduced by about half, and her straight leg raise tests were negative bilaterally. (*Id.*) Dr. Tabb observed that Plaintiff had reduced lumbar ranges of motion,

but her leg ranges of motion were full. (*Id.*) Dr. Tabb further observed that Plaintiff's right grip strength was modestly reduced, but her strength signs were otherwise normal and she was reportedly able to button, zip, and tie. (*Id.*) Dr. Tabb observed that Plaintiff used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 296.)

In determining the RFC, the ALJ afforded limited weight to Dr. Tabb's opinion, reasoning that it was vague, did not specify how frequently Plaintiff could perform the restricted functions, and was inconsistent with objective findings in Dr. Tabb's examination report. (*Id.*) The ALJ stated that it was "unclear what Dr. Tabb meant by 'mild' [restrictions], but the evidence nevertheless proves that the claimant's condition resulted in more than minimal limitations on work-related functions." (*Id.*)

The Second Circuit has found that a consultative examiner's use of the terms "moderate" and "mild," without additional information, was so vague as to render the opinion useless in evaluating whether the plaintiff can perform the exertional requirements of sedentary work. *Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000) (superceded by statute on other grounds). The Court recognizes that use of terms like "mild" and "moderate" has been found to pass substantial evidence muster when medical evidence shows relatively little physical impairment. *Anderson v. Colvin,* 12-CV-1008, 2010 WL 5939665, at *9 (N.D.N.Y. Nov. 5, 2013) (citing *Waldau v. Astrue,* 11-CV-0925, 2010 WL 6681262, at *4 [N.D.N.Y. Dec. 21, 2003]). However, here the ALJ found that Plaintiff's lumbar spine dysfunction, multiple level degenerative disc disease, and residual effect of L5-S1 microdiscectomy times two are severe impairments. (T. 24-25.)

As discussed above, the ALJ identified ambiguities, conflicts, and gaps in the medical opinions of record regarding Plaintiff's physical limitations. (T. 26-29.) For example, the ALJ noted ambiguity in Dr. Soults' opinion of January 26, 2012, stating that Dr. Soults may have had

12

sedentary work in mind when referencing secretarial work, and may have had medium work in mind when referencing Plaintiff's past work as a certified nurse's assistant, however the opinion does not appear to address light work between those exertional levels. (T. 29.) Moreover, in evaluating Dr. Soults' opinions of March 11, 2013, and March 25, 2013, following Plaintiff's second microdiscectomy surgery on March 11, 2013, the ALJ noted that the opinions did not provide long-term capacity assessments of Plaintiff's work-related limitations. (*Id.*) However, the ALJ did not recontact Dr. Soults to resolve any ambiguities in his opinions, or to obtain a more specific long-term capacity assessment of Plaintiff's work-related limitations.

Similarly, regarding Dr. Tabb's opinion that Plaintiff had "mild" restrictions in lifting, carrying, bending, pushing, and pulling, the ALJ noted that Dr. Tabb's opinion was "vague" and it was unclear what Dr. Tabb meant by the term "mild." (T. 29.) However, the ALJ did not recontact Dr. Tabb to resolve any ambiguities in her opinion, or to obtain a more specific opinion of Plaintiff's functional limitations.

The ALJ has an affirmative duty to develop a claimant's complete medical history. 20 C.F.R. §§ 404.1512(d), 416.912(d); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). By statute, an ALJ is required to develop a claimant's complete medical history for at least 12 months before an application for benefits was filed, and for a longer period when there is reason to believe that additional information is necessary to reach a decision. *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998). This duty exists even when a claimant is represented by counsel, due to the non-adversarial nature of a benefits proceeding. *DeChirico,* 134 F.3d at 1184; *Lamay*, 562 F.3d at 509.

An ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision. *Rosa*, 168 F.3d at 79 n.5; *see also*

13

*Hart v. Comm'r,* 07-CV-1270 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010). However, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

Moreover, an ALJ "is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *accord, Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999). Therefore, an ALJ cannot assess a plaintiff's RFC based on the ALJ's own interpretation of the medical evidence. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (holding that an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion").

Here, the ALJ determined that Plaintiff had the physical RFC to perform light work with additional postural limitations without a medical opinion indicating that Plaintiff could perform all of the physical requirements of the RFC. 20 C.F.R. § 404.1567(a); SSR 83-10, 1983 WL 31251 (1983). The Court recognizes that, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *House v. Astrue*, 11-CV-915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013). However, as noted above, that is not the case in the present matter because the ALJ determined that Plaintiff's lumbar spine dysfunction, multiple level degenerative disc disease, and residual effect of L5-S1 microdiscectomy times two are severe impairments. (T. 24-25.)

Accordingly, the ALJ's RFC determination was not supported by substantial evidence because there was no acceptable medical source opinion indicating that Plaintiff could perform the physical requirements of the RFC, including sitting for six hours, standing or walking for six hours, occasionally lifting up to 20 pounds at a time, and frequently lifting or carrying up to ten pounds during an eight-hour workday. *See Balsamo*, 142 F.3d at 81-82 (finding that the ALJ's determination that the plaintiff could perform sedentary work was not supported by substantial evidence in the absence of a medical opinion indicating that the plaintiff could perform sedentary work)*; Larkin v. Colvin,* 13-CV-0567*,* 2014 WL 4146262, at *9 (N.D.N.Y. Aug. 19, 2014) (holding that remand was required where the record lacked a broad assessment of Plaintiff's physical functional limitations from an acceptable medical source); *House*, 2013 WL 422058 at *4 (holding that remand was required where there was no medical source opinion supporting the ALJ's RFC determination); *Santiago v. Colvin*, 10-CV-1510, 2016 WL 1049011, at *7 (N.D.N.Y. March 14, 2016).

For these reasons, remand is necessary for the ALJ to recontact Dr. Soults and/or Dr. Tabb to obtain at least one complete medical opinion of Plaintiff's physical functional abilities and limitations. Accordingly, remand is also required for the ALJ to (1) reevaluate Plaintiff's RFC, (2) perform a new credibility analysis, and (3) reassess whether Plaintiff can perform her past relevant work, or other existing work in the national economy, based on a fully developed record. Therefore, the Court need not and will not reach Plaintiff's remaining arguments set forth above in Part I.D. of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: August 24, 2016
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge